# Daniel S. Gallagher and Tague Gallagher, trading as Gallagher Brothers, *v.* Patrick Burke, Catherine Burke and James Burke, Appellants.

*Landlord and tenant—Lease—Eviction.*

Any act of the landlord which deprives the tenant of that beneficial enjoyment of the premises to which he is entitled under the lease, will amount in law to an eviction, and where the landlord, after notice given by tenant of intention to surrender possession of the premises at the date of the expiration of the lease, goes upon the premises before the tenant has removed all of his goods, it will be regarded as an intention to permanently retain possession.

*Measure of damages—Exemplary damages.*

In the case of trespass or eviction by a landlord, the real loss to the tenant is the value of the use of the part of the premises taken, in connection with that which remains, and the measure of damages is the difference in rental value.

In an action by a tenant against his landlord for eviction it is the duty of the court to submit a question of the kind of damages that may be given, to the jury, if there be evidence of aggravation or oppression. Compensation is the rule in the absence of such circumstances. Exemplary damages may follow in the wake of their existence, but there must be evidence on the point. If there is; it is proper to submit it to the jury for the ascertainment of the circumstances that constitute oppression and aggravation.

Argued Jan. 10, 1900. Appeal, No. 23, Jan. T., 1900, by defendants, from judgment of C. P. Luzerne Co., May T., 1891, No. 541, on verdict for plaintiffs. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ. Affirmed. Opinion by W. W. PORTER, J.

Trespass for forcible dispossession of premises occupied under lease. Before BENNETT, J.

The facts appear in the following portions of the charge of the court.

This action . . . . was brought to recover damages alleged by the plaintiffs to have been sustained by them in the alleged suspension of their business, the injury to their business credit, their loss of certain property and their inability to procure a place in which to conduct further business, in consequence of

the defendants' alleged unlawful and forcible dispossession of them of certain premises occupied by them in the then borough of Hazleton, this county, under a lease from Catherine Burke, one of the defendants, who was the owner of said premises, or, at least, under an extension by her of a former lease made to the plaintiffs, which had been entered into in her behalf and with her approbation by her husband, Patrick Burke, another of the defendants. . . . The defendants, Catherine Burke and Patrick Burke, are husband and wife, and the other defendant, James Burke, is their son. . . . The building contains on the first floor two storerooms a large and a small one, and having on the second floor rooms fitted up for a dwelling house. . . . The plaintiffs, with a view of carrying on the liquor business, as well as grocery business, . . . . took a written lease for the period of one year, from April 1, 1890, to April 1, 1891, for the whole premises; that is, for the two storerooms, and the dwelling house portion on the second floor, including the cellar. The rent for this lease was at the rate of $35.00 a month, payable monthly in advance . . . . The plaintiffs continued in the grocery business and in the actual possession of the larger storeroom for that purpose, as also in possession of the second floor as a dwelling house, at least until May 18, 1891, when there was a personal property sale of their goods by the sheriff at the suit of one Daniel Sweeny. The sheriff's sale was on May 18. The plaintiffs also continued in the actual possession of the smaller storeroom, having there a certain stock of liquors, until, at least, as late as April 20, 1891; so, also the plaintiffs paid the whole year's rent accruing under this written lease, that is, the rent for the year from April 1, 1890, to April 1, 1891. . . .

We come now to the controverted questions of fact. In the first place, it is claimed in behalf of the plaintiffs that at some point of time prior to the expiration of the term of the written lease in question—that is, prior to April 1, 1891—there was an oral agreement on the part of Catherine Burke with them, the plaintiffs, by which she stipulated to extend the term of that written lease, for one year from April 1, 1891, at the same rent, they at the same time informing her of their desire to quit the liquor business after April 1, 1891, and to extend their grocery business and occupy the smaller as well as the larger storeroom

for that purpose; that notwithstanding such agreement on the part of Catherine—I am speaking now of the claim of the plaintiffs—the three defendants in violation of that agreement and of the plaintiffs' rights thereunder to the occupancy of the whole of this building, came there on April 20, 1891, and dispossessed the plaintiffs of the smaller storeroom, taking off the lock from the front door and putting another new lock on, and removing some of the liquors outside upon the sidewalk or in front of the building, and locking the door. As to these matters, it is claimed in behalf of the defendants, on the other hand, that in the latter part of the year 1890, some three months before the end of the term of the written lease, the plaintiffs notified Mrs. Burke that they did not propose to keep a liquor store after April 1, 1891; that they would not take out a liquor license for that purpose, and that they no longer wanted the smaller storeroom; and that thereupon it was arranged between Mrs. Burke and the plaintiffs that the plaintiffs should keep only the balance of the building and not the liquor storeroom. That, in consequence of this, Patrick Burke, the husband, in order to provide for a tenant of the smaller storeroom as a liquor store, procured a license in his name in the early part of March, 1891, with a view of transferring it to a proposed new tenant of the smaller storeroom; that, after the expiration of the term of the written lease, namely, April 20, 1891, the plaintiffs having refused to vacate the smaller storeroom, the defendant, Mrs. Burke, went into the grocery store part of the building, and passed on into the liquor store through a door connecting the two storerooms, where, assisted by her son, James Burke, whom she let in through a back window, she opened the front door of the liquor store and put out some of the barrels or kegs of liquor and put on a new lock to the front door; not removing all of the liquors because of the fact, as alleged by them, that one of the plaintiffs about that time agreed with her, Mrs. Burke, that if she would not interfere longer with the putting out of the goods, the plaintiffs would vacate this liquor store of their own accord. That the next day the defendant, Mrs. Burke, put these liquors thus removed, back in the cellar.

Considering all of the testimony on the subject, as also the credibility of the witnesses, what are the facts concerning these disputed matters? [In the first place, was there an agreement

as claimed for the plaintiffs, for an extension of the term of the written lease for another year for this whole building; or, as claimed by the defendants, was the old lease extended only as to the balance of the building, that is, exclusive of the liquor storeroom? We might say the whole case hinges upon what you may find to be the fact with regard to this question. This is a question which you are to decide under all of the evidence. In arriving at a conclusion in the matter, you are to take into consideration all of the circumstances shown upon the one side and the other, under the testimony, the credibility of the witnesses, their ability to narrate to you the truth of these matters, and their disposition to do so or otherwise. If you find the fact as claimed for the defendants, then the plaintiffs were not entitled to possession of the liquor storeroom after April 1, 1891, but Mrs. Burke was entitled to that possession by reason of the fact that there was no extension of the lease after that for the store part of building, and if she or those acting with her in taking possession of the liquor storeroom used no more force than was reasonably necessary to get such possession, then there can be no recovery here, and that would end this lawsuit. If, on the other hand, you find as claimed for the plaintiffs, that there was an agreement on the part of Catherine Burke to extend the term of the written lease as to the whole building, then the plaintiffs were entitled to the possession of the whole of this building, including the liquor storeroom; and the defendants, or any one or more of them who may have been parties to the taking possession of the liquor storeroom on April 20, 1891, would be trespassers and be liable to the plaintiffs here in damages for such trespass.] [1] . . .

[We instruct you that the plaintiffs' measure of damages in case of their recovery is compensation to them in money for the difference between the fair value to them, at the time of the trespass, of the use of the whole building for grocery or other purposes from April 20, 1891, the day of the trespass, to April 1, 1892, the day when their lease would have expired, and the value of that portion of which their possession was not interfered with; and that in considering such value you are to take into consideration the nature, the amount and the profits of the plaintiffs' existing grocery business as viewed at that time, and the necessities of the plaintiffs in that business for the

additional room in which to conduct it, as also their inconveniences and injuries to their business in not having the use of the whole building.] [2]

Defendants' fourth point and the answer thereto were as follows :

[4. Under all the circumstances in this case it is not one in which vindictive or exemplary damages can be recovered. *Answer :* This point is denied. That depends on matters of fact which are for the jury.] [3]

Plaintiffs' ·fifth point and the answer thereto were as follows :

[The plaintiffs are entitled to recover in this action vindictive damages, if the jury believe under all the evidence in the case, the defendants or either one of them was actuated by malice or exhibited wanton conduct in dispossessing the plaintiffs. *Answer :* We answer this point by saying that vindictive or exemplary damages are such as are allowable in certain cases, beyond what will actually compensate an injured party for damages sustained by him, by way of punishment of an offender who has wantonly and wilfully committed a wrong, to the injury of another, and if you find under all of the credible testimony that there was wantonness or malice on the part of all the defendants whom you may find to be guilty of the trespass complained of, then and then only, you may, in addition to actual compensation to be allowed to the plaintiffs under the rule that we have laid down in the general charge, allow also vindictive or exemplary damages commensurate with the wantonness or malice of the least culpable of the defendants who are liable at all.] [4]

Verdict and judgment for plaintiffs for $800. Defendants appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*George H. Troutman* and *John McGahren,* for appellants.— If the entry by Mrs. Burke on April 20, 1891, was not permanent but only such as to temporarily interfere with the use and enjoyment of the store by the tenants, and if there had been an agreement to renew the lease, then she would be liable to them for such damages, loss and inconvenience as they experienced and suffered while the said interference lasted. This question should have been submitted to the jury : Pier v. Carr, 69 Pa. 326.·

An interruption of a tenant by the landlord is not necessarily an eviction of him: Bennett v. Bittle, 4 Rawle, 339; Fuller v. Ruby, 76 Mass. 285; Avery v. Dougherty, 102 Ind. 443; Hayner v. Smith, 63 Ill. 430.

It is contended that the true and proper question for the jury to determine in case the plaintiffs had been evicted from a part of the leased premises, to wit: the liquor store, was this: the difference between the rental value of the store taken and the store which they retained, both being considered as a whole and used in connection with each other. And in order to decide this they should have offered evidence to show the diminution in the rental value of their leasehold, by reason of the taking of the liquor store: Irwin v. Nolde, 176 Pa. 594; Prescott v. Otterstatter, 79 Pa. 462; Fairman v. Fluck, 5 Watts, 516.

In the absence of proof of vindictiveness, oppression or outrage on the part of those charged with a trespass, it is error to submit the question of vindictive damages to the jury: Nagle v. Mullison, 34 Pa. 48; Rose v. Story, 1 Pa. 190; Amer v. Longstreth, 10 Pa. 151.

Indeed all the evidence in the case clearly rebuts any inference of malice or wantonness on the part of the defendants.

*John T. Lenahan,* with him *Edward A. Lynch,* for appellees.

OPINION BY WILLIAM W. PORTER, J., March 21, 1900:

The assignments of error are four in number. The first is to a part of the charge. If anything is clear in this case it is that it turns on the question, whether there was an extension of the lease between the parties as to the part of the property used as a liquor store-room. So the trial judge rightly said, and submitted the question of fact to the jury for decision. But little stress is laid upon the first assignment. We dismiss it.

It is claimed by the second assignment that the presentation made by the portion of the charge therein quoted excludes the submission to the jury of the question, whether there had been a technical eviction. It is an objection to an omission. It is groundless. By no point submitted by the defendants, was the trial judge requested to instruct the jury on the subject. As developed by their evidence and as shown by the points of charge submitted, the defendants tried their case on the theory

that they had a right to the possession of the liquor-room; that the prior lease had not been extended and that their entry was for the purpose of taking permanent possession. The testimony does not indicate that the entry was intended to be transient. Had the question of eviction pointedly been raised, it is possible that the court below would have been warranted in saying to the jury that if they believed that the lease had been extended, as claimed by the plaintiffs, the acts of the defendants amounted to an eviction. The term eviction is no longer restricted in application to its original meaning of ouster by title paramount, or to a total deprivation of possession by the landlord. "Any act of the landlord which deprives the tenant of that beneficial enjoyment of the premises to which he is entitled under the lease will amount in law to an eviction:" Hoeveler v. Fleming, 91 Pa. 322. The court was not bound to rule upon this, however. The theory upon which the case was tried in the court below is the one upon which it must be decided here. The defendants attempted to justify their action, not on the basis of a transient trespass mistakenly committed, but on the ground of a right to a present and permanent retention of possession. In this view the trial judge was warranted in assuming, from the acts of the defendants proved and the claim of right made, that the defendants intended to permanently deprive the plaintiffs of the possession of the store. The first part of the clause of the charge to which objection is made is an application of the principle stated in Irwin v. Nolde, 176 Pa. 594, that in the case of a trespass by a landlord "the real loss is the value of the use of the part taken in connection with that which remains, and is measured by the difference in rental value." The second part of the clause is justified by the case of Seyfort v. Bean, 83 Pa. 450. We are unable to see that this part of the charge opens the door to the recovery of any damages to which the plaintiffs were not entitled on a finding by the jury that they held under a renewal of the original lease.

The third and fourth assignments raise this question : Was error committed in permitting the jury to award exemplary damages in case they found malice or wantonness? There was some evidence in the words and acts of the defendants testified to, which might warrant the jury in finding that the trespass of the defendants was malicious and wanton. If they so found,

then they were warranted in measuring the damages by the punitive or exemplary standard.   The court so instructed them. " It is the duty of the court to submit a question of the kind of damages that may be given, to the jury, if there be evidence of aggravation or oppression.   Compensation is the rule in the absence of such circumstances.   Exemplary damages may follow in the wake of their existence, but there must be evidence on the point.   If there is, it is proper to submit it to the jury for the ascertainment of the circumstances that constitute oppression and aggravation.   The facts may or may not satisfy a jury that exemplary damages should be given, but they alone can dispose of the evidence, if there be any on the subject: " Nagle v. Mullison, 34 Pa. 48.   See also Pittsburg, etc., Ry. Co. v. Lyon, 123 Pa. 140.

We are of opinion that no error was committed by the court below, and the judgment is therefore affirmed.