## Adler *v.* Sklaroff, Appellant.

Argued October 4, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Simon Shapiro,* with him *Lewis Walters,* for appellant.

*Samuel C. Nissenbaum,* for appellee.

OPINION BY RENO, J., March 3, 1944:

The trial judge sitting without a jury entered judgment for a tenant who sued his landlord in trespass to recover damages sustained through the negligent maintenance and repair of the roof of an apartment building. From the refusal of his motions for a new trial and judgment n. o. v., the landlord appealed.

The tenant occupied the top floor of the building, and prior to March 29, 1942, he noticed small leaks in the ceiling of his apartment. He reported this condition to the superintendent of the building, and the roof was patched with tar paper by the superintendent's son about March 25th or 26th. The young man who did the repairing was employed as maintenance man for the apartment in his spare time. He was not a roofer by trade, and his only experience along this line had been the repairing of other portions of the roof on three or four previous occasions. On March 28th a windstorm blew away the patches put on by the maintenance man shortly before, and other portions of the roof. On the following day, during a heavy rain, water leaked through the ceiling of the apartment, soiling the tenant's rugs, furniture covers, and draperies. The walls and ceiling of the apartment itself were so damaged by the water as to make the quarters no longer livable, and the furniture was moved into the hall and into a vacant one room and bath apartment to protect it from damage. The tenant and his wife moved to a hotel.

The trial judge found that the landlord had negli-

gently maintained and repaired the roof. There is sufficient testimony to support the finding that the landlord was negligent in making repairs to the defect which had been discovered prior to the rainstorm that damaged the tenant's personal belongings. He entrusted the repairs to a young man who was not a roofer, and who had had no roofing experience other than the applying of three or four patches to other parts of the roof of the apartment building on previous occasions. That the repairs were not skillfully done. is amply demonstrated by the fact that the first high wind ripped off the patch; and that after the landlord subsequently employed an experienced roofing contractor there was no further difficulty: *Minor v. Hogg,* 67 Pa. Superior Ct. 419; *DuBois Recreation Co. v. Boyle,* 95 Pa. Superior Ct. 219; *Germansen v. Egan,* 130 Pa. Superior Ct. 21, 196 A. 881.

True, the lease did not contain a covenant to repair and, generally, in the absence of such covenant, a landlord is under no obligation to repair: *Wood v. Carson,* 257 Pa. 522, 101 A. 811. But where a landlord leases different parts of a building to different tenants he remains in control of those portions not specifically leased, and as to such portions he retains the responsibilities of a general owner: *Lewin v. Pauli,* 19 Pa. Superior Ct. 447. "The roof of a building rented to different tenants is not leased to the tenant of the floor just below it, but remains in the control of the landlord, and the latter is responsible for the damages naturally resulting from its negligent maintenance": *Germansen v. Egan,* supra, p. 25. Moreover, an undertaking by a landlord to make repairs, even in the absence of a covenant to repair, creates a liability for injuries to a tenant resulting from negligent performance: *Theakston v. Kaszak,* 152 Pa. Superior Ct. 576, 33 A. 2d 46; *Rubin v. Girard Trust Co.,* 154 Pa. Superior Ct. 257, 35 A. 2d 601.

The trial judge awarded the tenant $234.79 as damages; $8 for the cost of repairing his personal property; and the balance, $226.79, to cover room rent paid to hotels from March 29, 1942, when he left the apartment building, to May 6, 1942, when he moved into an apartment in another building. The liability of the landlord for the damages to his tenant's personal property is clear, and requires no discussion. But the expenditures for the hotel bills, while the apartment was being repaired, cannot be recovered.

The tenant's basic proposition is that he was evicted from the apartment. It has been held that a forcible or physical expulsion is no longer necessary to constitute an eviction, and that any act of a landlord which deprives a tenant of that beneficial enjoyment of the premises to which he is entitled under a lease will amount in law to an eviction: *McCandless v. Findley*, 86 Pa. Superior Ct. 288. Recently, it has been said that there is no eviction, unless the acts of the landlord show an intent to hold adversely to the tenant: *Kahn v. Bancamerica-Blair Corp.*, 327 Pa. 209, 193 A. 905. No such intent was manifested here. But, granting the tenant's contention that the negligent maintenance and repair of the roof, without more, constituted a temporary eviction, he would not be entitled to recover the hotel bills. For, the only effect of an eviction in the circumstances here presented is to suspend the payment of the rent: *Chelten Ave. Bldg. Corp. v. Mayer*, 316 Pa. 228, 172 A. 675; *Oakford v. Nixon*, 177 Pa. 76, 35 A. 588; *Hoeveler v. Fleming*, 91 Pa. 322; *McCandless v. Findley*, supra; *Grossman v. McMahon*, 63 Pa. Superior Ct. 191; *McSorley v. Allen*, 36 Pa. Superior Ct. 271. The cases in which greater damages have been held to be recoverable have been based upon factors not present in this case. Thus, in *Kelly v. Miller*, 249 Pa. 314, 94 A. 1055, for a partial eviction from a theatre the tenant was allowed to recover the amount by which

its rental value was reduced; in *Fehl v. Pfaeffle,* 80 Pa. Superior Ct. 447, and *Hendler v. Quigley,* 38 Pa. Superior Ct. 39, tenants unlawfully evicted from store properties were allowed recovery of their probable profits; in *Weighley v. Muller,* 51 Pa. Superior Ct. 125, the tenant was assaulted, beaten and insulted in the process of the eviction; and in *Gallagher v. Burke,* 13 Pa. Superior Ct. 244, where the rental value was held to be the proper measure of damages, the landlord had indicated his intent to deprive the tenant permanently of the possession of the store. The rule is that for an eviction, not caused by the fraud or connivance of the landlord, not in disaffirmance of the lease, and without an intent to hold adversely to the tenant, the proper measure of damages is the consideration paid for the lease: *Lanigan v. Kille,* 97 Pa. 120; *Einfeld v. Shermer,* 56 Pa. Superior Ct. 4. "If the tenant has enjoyed the possession of the demised premises, he has had the precise equivalent for the rent; if he has paid the rent in advance, he is entitled to recover it back in the form of damages for the eviction": *Lanigan v. Kille,* supra, p. 126. This tenant paid no rent after he left the premises on March 29, 1942, and he is not entitled to recover anything except the damages to his personal property.

The cases upon which the tenant relies (*Tarnogurski v. Rzepski,* 252 Pa. 507, 97 A. 697; *Ehinger v. Bahl,* 208 Pa. 250, 57 A. 572; *Germansen v. Egan,* supra; *Gabai v. Krakovitz,* 98 Pa. Superior Ct. 150), do not sustain his contention that he is entitled to reimbursement for his hotel bills. They do support his right to recover the damages to his personal property, and to that extent have been given effect in this decision.

The judgment is modified by reducing the amount thereof to $8, and, so modified, it is affirmed.